CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 08 2016

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KRISTOPHER M. GUPTON, | CASE NO. 7:15CV00214 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MR. B. WRIGHT, ET AL., | By: Glen E. Conrad |
| | Chief United States District Judge |
| Defendants. | |

Kristopher M. Gupton, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Virginia Department of Corrections (VDOC) prison officials, violated Gupton's free exercise rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq. Upon review of the record, the court concludes that defendants are entitled to summary judgment.

I.

At the time he filed this action, Gupton was incarcerated at River North Correctional Center ("RNCC"). In April 2014, Gupton ordered a religious publication called "My Awakening." Property Officer Felts,[1] and later, Officer Walz for Warden Wright, disapproved Gupton's order under prison security policies, upon finding it to be

> [m]aterial that emphasizes depictions or promotion of violence, disorder, insurrection, terrorist, or criminal activity in violation of state or federal laws or the violation of the Offender Disciplinary Procedure, and . . . depicts, describes, or promotes gang bylaws, initiations, organizational structure, codes, or other gang-related activity or association.

---

[1] Gupton had referred to this officer as Mr. Feltz, but his name is actually spelled Felts, and the court will direct the clerk to correct the docket accordingly.

(Compl. ¶ 24, ECF No. 1.) Felts forwarded Gupton's request to obtain this publication to the Virginia Department of Corrections ("VDOC") Publication Review Committee ("PRC"). On May 30, 2014, the PRC disapproved "The Awakening" for the security reasons already cited by Felts and Wright. Gupton then filed a grievance to RNCC officials, complaining that denial of his publication constituted "discrimination," because the institution allowed prisoners to possess other publications about racial or religious violence. Assistant Warden Booker ruled Gupton's grievance unfounded, based on the PRC's disapproval of the publication, and on appeal, Chief of Operations Robinson upheld Booker's ruling.

Gupton alleges that in October 2014, he requested a "holiday package" from the commissary for the Asatru celebration of the winter solstice on December 21, 2014, a holiday approved by the VDOC Faith Review Committee ("FRC") for inmates to celebrate. Warden Wright told Gupton that according to an August 2014 memorandum from Robinson, the accommodation approved for this religious holiday was a special service and celebratory meal comprised of items from the regular prison menu. Gupton filed an unsuccessful grievance, complaining that since other religious groups received holiday packages, it was discriminatory not to provide a holiday package for his Asatru holiday celebration.

Gupton also complained to prison officials that publications requested by the prison's Asatru group were being denied and asked for the review standard. RNCC Institution Investigator Horton replied, "All material that is allowed will be processed. Any other material will be checked case by case. If it is found to be racial or hate group material will be disapproved." (Compl. ¶ 26.) Gupton filed grievances, complaining that Horton's review standard was discriminatory. Each grievance was returned for insufficient information about what materials Horton had denied to Gupton. Gupton's appeal of these intake decisions was

rejected. In September 2014, Gupton filed an informal complaint after Horton disapproved an item from his incoming mail, an "Invictus Cataloge." (Pl. Resp. Ex. B, ECF No. 37.) Horton responded that book descriptions in the catalog included excerpts "that preached hate of other races and promoted violence against non-whites. Material that is detrimental to a prison environment will not be allowed." (Id.)

Gupton filed this § 1983 action against the following defendants: Felts, Wright, Booker, Robinson; Lou Cei of the VDOC's PRC; Regional Ombudsmen Parr; RVCC Institution Ombudsman Walls; Operations Manager Waltz; Ombudsman Services Unit Manager Locust; RNCC Food Service Director Morrison; and a John Doe Regional Ombudsman. Liberally construed, Gupton's submissions alleges the following violations of his rights under the First and Fourteenth Amendments and RLUIPA: (1) denial of the book "My Awakening," although other books about racial violence are allowed; (2) denial of his requested holiday package, although other religious groups were approved to receive such packages; and (3) Horton's rejection of several books Gupton requested based on the officer's personal prejudice against Gupton's Asatru faith. As relief, Gupton seeks injunctive and declaratory relief and monetary damages. Defendants have filed a motion for summary judgment, and Gupton has responded, making the matter ripe for disposition.

## II.

### A.

Among other things, Gupton's complaint seeks declaratory and injunctive relief directing RNCC officials to allow the publications and religious items he requested while incarcerated there and that VDOC recognize and permit offenders to observe Asatru holidays. (Compl. ¶¶ 44-

3

49.) Defendants argue that Gupton's claims for injunctive and declaratory relief must be dismissed as moot, since he has been released from prison.

The jurisdiction of federal courts is limited to live cases or controversies. U.S. Const. art. III, § 1. If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claims must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-99 (3d Cir. 1996). The release of a prisoner generally renders moot any claims for injunctive or declaratory relief relating to the former place of confinement. See County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (finding that prisoner's transfer rendered moot his claims for injunctive and declaratory relief).

It is undisputed that on June 1, 2015, shortly after filing this § 1983 action, Gupton received a direct discharge and is no longer in the custody of the VDOC. Because Gupton is no longer subject to the RNCC living conditions of which he complains, Gupton no longer needs or could be granted the relief he sought through a declaration or injunction. Accordingly, the court will grant defendants' motion and will dismiss all such claims as moot.

### B.

Defendants also argue that they enjoy immunity against Gupton's claims for monetary damages under RLUIPA. The court agrees and will grant their motion for summary judgment as to such claims.[2]

As an exercise of congressional spending power, RLUIPA does not waive the Eleventh Amendment immunity of the States, and as such, it does not authorize claims for money

---

[2] An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

damages against an official in his or her official capacity. See Sossamon v. Texas, 563 U.S. 277, 281 (2011); Rendelman v. Rouse, 569 F.3d 182, 187 (4th Cir.2009) (citing Madison v. Virginia, 474 F.3d 118, 131 (4th Cir. 2006)). The Fourth Circuit has held that, in the spending power context, "RLUIPA cannot authorize damage actions against private individuals." Rendelman, 569 F.3d at 187. RLUIPA also includes an independent commerce clause basis for liability. See 42 U.S.C. § 2000cc-1(b). However, Gupton fails to allege any respect in which the requested accommodations of his religious beliefs affect interstate commerce. See, e.g., Rendelman, 569 F.3d at 189 (indicating claim under this provision would require specific factual connection to alleged burden on plaintiff's religious exercise). Under this precedent, the court is satisfied that Gupton's complaint does not present a factual basis for a claim of monetary damages under any facet of RLUIPA. Therefore, the court will grant defendants' motion and dismiss Gupton's RLUIPA claims for damages.

Eleventh Amendment immunity does not bar Gupton's constitutional claims for damages under § 1983 against the defendants in their individual capacities. Lovelace v. Lee, 472 F.3d 174, 193-94 (4th Cir. 2006). The defendants argue, however, that they are entitled to qualified immunity against these claims, which the court will separately address.

## C.

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly

established. Saucier, 533 U.S. at 206. If the court determines that the facts alleged, taken in the light most favorable to the nonmovant, do not show that the officer's conduct violated a constitutional right, then the movant is entitled to summary judgment without further discussion of qualified immunity. Id. at 201.

Under the first facet of the Saucier analysis, the court inquires whether the complaint and attachments allege "enough facts to state a [constitutional] claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). The court must construe the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted). Under the second prong of the qualified immunity analysis, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

### 1. No personal involvement in constitutional violations

An official can be held liable under § 1983 in his individual capacity only if his "own individual actions . . . violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2008). "[T]here is no vicarious liability under § 1983." Revene v. Charles County Com'rs, 882 F.2d 870, 874 (4th Cir. 1989). Given that

> [r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (adding that "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"), and inmates do not have a constitutionally protected right to a grievance procedure, see, e.g., Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991), there is no liability under § 1983 for a prison administrator's response to a grievance or appeal.

6

Brown v. Virginia Dep't of Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009). Gupton's claims against Defendants Wright, Walz, Parr, and Locust concern nothing more than the responses these individuals made to Gupton's grievances and appeals. Because these actions do not implicate any constitutionally protected right, the court will grant their motion under Saucier and dismiss Gupton's claims against them.[3]

### 2. No Free Exercise violations

The Free Exercise Clause of the First Amendment protects an inmate's right to the free exercise of religion. U.S. Const. amend. I; Cruz v. Beto, 405 U.S. 319, 322 (1977). To state a claim that prison officials or regulations have violated an inmate's right to free exercise of religion, a plaintiff must prove that he holds a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). The Supreme Court defines a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

Gupton names Defendants Felts, Horton, Robinson, Cei, and Morrison to his religious rights claims. His complaint and attachments, however, fail to state any respect in which his inability to obtain the requested publications or holiday package put substantial pressure on him

---

[3] Counsel for the defendants did not enter an appearance for Institutional Ombudsman Walls or the John Doe Regional Ombudsman. However, on the record now before the court for the reasons discussed herein, however, Gupton has not alleged any actionable claim against these unrepresented defendants. Therefore, the court will summarily dismiss all claims against Walls and Doe under 28 U.S.C. § 1915A(b)(1), without prejudice. A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

7

"to modify his behavior and to violate his beliefs," so as to constitute a "substantial burden" on his religious practice. Thomas, 450 U.S. at 718. Indeed, neither the complaint nor his other submissions describe the nature of his personal beliefs or specify any respect in which his religious practice was hampered without access to the requested books or holiday package. Absent a showing that defendants' actions or regulations placed a substantial burden on his religious practice, Gupton fails to state a viable Free Exercise claim. Accordingly, the court will grant defendants' motion under Saucier and dismiss such claims.

### 3. No denial of equal protection

In all three of Gupton's claims, he apparently contends that defendants have discriminated against him, in violation the Equal Protection Clause of the Fourteenth Amendment, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This clause "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir.2002) (citation and internal quotation marks omitted). To prove an equal protection violation, prisoner litigants must demonstrate that the jail's alleged unequal treatment of similarly situated individuals does not "serve[ ] a legitimate state interest" or is not "rationally related" to any such interest. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (citation omitted); see also Turner v. Safley, 482 U.S. 78, 89-91 (1987) (noting four factors to consider in determining if prison regulation is rationally related to legitimate governmental interest).[4]

---

[4] These four factors to be considered are: (1) whether a "valid, rational connection" exists between the regulation and a legitimate and neutral governmental interest; (b) whether alternative means of exercising the asserted constitutional right remain open to plaintiff; (c) whether accommodating the asserted right will have an adverse impact on staff, inmates, and prison resources; and (d) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." Turner, 482 U.S. at 89-92. Gupton's allegations do not implicate any of these factors and thus do not support any claim that defendants violated his constitutional rights in any respect.

8

Gupton's allegations fail to state a factual basis for either element of his equal protection claims. First, he does not deny that the books he requested included material in violation of the prison security regulations cited to him, such as promotion of racial hatred and violence. Nor does he provide facts demonstrating that the approved books he lists in the complaint did not include such prohibited material. Similarly, he does not deny that he could eat a holiday meal consistent with his religious beliefs without a holiday package, or show that inmates of other religions could also do so. Thus, his submissions do not support a finding that he is similarly situated with inmates whose books or holiday packages have been approved by prison officials.

Gupton also fails to show that officials' policies and decisions to deny his requests for certain books and meal accommodations were not not reasonably related to legitimate penological interests. It is self-evident that prison administrators have a legitimate security interest in restricting inmates' access to publications promoting racial hatred, violence or gang activities, and a legitimate fiscal interest in providing special holiday foods for religious holidays only if an inmate's religious beliefs cannot be met through the regular menu. In such circumstances, Gupton has simply not stated any equal protection claim against any of the defendants. As such, they are entitled to qualified immunity under the first facet of Saucier. Accordingly, the court will grant their motion and dismiss Gupton's constitutional claims.

## III.

For the reasons stated, the court will grant defendants' motion for summary judgment and will dismiss all claims against the unrepresented defendants, Walls and John Doe, without prejudice under § 1915A(b)(1). An appropriate order will issue herewith. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 6th day of February, 2016.

_____
Chief United States District Judge